**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

DR. NANCY MONDERO; JUDY L. HOWETT, )
NP; MARGARET M. SAWYER; TANIKKA )
R. MILLER; and MARIAM L. LONG, )
                                     )
         Plaintiffs, )
                                     )
        v.                      )      C. A. No. 14-588-RGA-MPT
                                       )
LEWES SURGICAL & MEDICAL )
ASSOCIATES, P.A., a Delaware Professional )
Association; SEMAAN M. ABBOUD, M.D.; )
and BETH E. BITTNER, )
                                     )
         Defendants.

## REPORT AND RECOMMENDATION

## I.     Introduction

This employment discrimination case involves several claims. Plaintiffs, Dr.

Nancy Mondero ("Mondero"), Judy L. Howett, NP ("Howett"), Margaret M. Sawyer

("Sawyer"), Tanikka R. Miller ("Miller"), and Marian L. Long ("Long") (collectively,

"plaintiffs") allege they were wrongfully terminated from their employment with

defendant, Lewes Surgical & Medical Associates ("LSMA"). Mondero, Howett, Miller,

and Sawyer were terminated on January 10, 2013, and Long was terminated on

February 19, 2013. Plaintiffs bring the following claims: Count I for hostile work

environment and sex discrimination under Title VII of the Civil Rights Act of 1964; Count

II for hostile work environment and sex discrimination under 19 DEL. C. § 711; Count III,

as to Howett, Sawyer, and Long for Federal Age Discrimination pursuant to 26 U.S.C. §

621 *et seq.*; Count IV, racial discrimination and hostile work environment under Title VII

as to Miller; Count V, regarding Miller, Sawyer, and Long, breach of the implied

covenant of good faith and fair dealing in employment; Count VI, ERISA violations pursuant to 29 U.S.C. § 1001 *et seq.* as to Mondero and Howett; Count VII, conversion of 401K money alleged by Mondero and Howett; and Count VIII, conversion of meaningful use funds asserted by Howett against LSMA and defendants Semaan M. Abboud, M.D. ("Abboud") and Beth E. Bittner ("Bittner") individually.

Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (FED. R. CIV. P.) on Counts I, II, V, VI, VII, and VIII and Counts I, II, III, and IV with respect to Abboud and Bittner.

## II.    Background

LSMA is a medical provider with two offices in Sussex County, Delaware that is solely owned by Abboud.[1]  Plaintiffs were employed at LSMA beginning at various times until their respective terminations on either January 10 or February 19, 2013.   Mondero was employed at LSMA as a doctor beginning in 2002 until January 10, 2013,[2] and claims to be a member of three protected classes:  female, homosexual, and over the age of 40.[3]  Howett, a female over the age of 40 years, was employed at LSMA as a nurse practitioner from June 1, 2002 until January 10, 2013.[4]  Miller served as a receptionist from April 2008 until January 10, 2013.[5]  Miller is a female African American.[6]  Sawyer, a female over the age of 40 years, worked as a registered nurse

---

[1] D.I. 1 at ¶¶ 28-29.
[2] *Id.* at ¶¶ 11-12.
[3] *Id.* at ¶ 13.
[4] *Id.* at ¶¶ 16, 17.
[5] *Id.* at ¶¶ 19-20.
[6] *Id.* at ¶ 21.

from November 2007 until January 10, 2013.[7]  Long was employed as a registered nurse from May 2006 until February 19, 2013,[8] and is also a female over the age of 40 years.[9]

In September 2012, Abboud hired Bittner to serve as LSMA's office manager.[10] Although LSMA's hiring policy provided that, to the extent possible, job openings would be filled from within the company, the position of office manager was not advertised within LSMA.[11]  Plaintiffs allege that Bittner and Abboud were engaged in a romantic affair prior to Bittner's hiring.[12]  They also contend that Bittner was unqualified for the position, and obtained the job solely due to her relationship with Abboud.[13]  After her appointment as officer manager, Bittner immediately changed long standing office policy including "the handling of employee vacation and sick time and the use of cell phones."[14]

Plaintiffs assert that Abboud and Bittner openly discussed their relationship and demonstrated their affection within the offices of LSMA and in the presence of employees.[15]  Plaintiffs further claim Abboud repeatedly and publicly made discriminatory comments, such as, referring to blacks as "n___ers," describing his wife and daughter as "whores," and expressing his disapproval of gays and lesbians.[16]

---

[7] *Id.* at ¶¶ 22-24.
[8] *Id.* at ¶¶ 25-26.
[9] *Id.* at ¶ 27.
[10] *Id.* at ¶¶ 30-31.
[11] *Id.* at ¶¶ 32, 35.
[12] *Id.* at ¶ 36.
[13] *Id.* at ¶ 43.
[14] *Id.* at ¶ 45.
[15] *Id.* at ¶¶ 38-40.
[16] *Id.* at ¶ 41.

Plaintiffs complained to Abboud about Bittner's management.[17]  Despite receiving

excellent performance evaluations, following Bittner's appointment as office manager,

plaintiffs were terminated.[18]

## III.    Discussion

### Motion to Dismiss Standard

In analyzing a motion to dismiss under FED. R. CIV. P. 12(b)(6), a review of Rule

8(a)(2) is necessary.  It requires that a pleading contain a "short and plain statement of

the claim showing that the pleader is entitled to relief."  That standard "does not require

'detailed factual allegations,' but . . . demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."[19]  Thus, to survive a motion to dismiss under Rule

12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a

claim for relief that is plausible on its face.'"[20]  The purpose of a Rule 12(b)(6) motion to

dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide

the merits of the case.[21]  Evaluating a motion to dismiss under Rule 12(b)(6) requires

the court to accept as true all material allegations of the complaint.[22]  "The issue is not

whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer

evidence to support the claims."[23]  A motion to dismiss may be granted only if, after,

---

[17] *Id.* at ¶ 49.
[18] *Id.* at ¶¶ 53-54.
[19] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007)).
[20] *Id.* (quoting *Twombly*, 550 U.S. at 570); *see* FED. R. CIV. P. 12(b)(6).
[21] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).
[22] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).
[23] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted).

"accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[24]

To survive a motion to dismiss under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[25] A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief'" beyond "labels and conclusions."[26] Heightened fact pleading is not required: rather "enough facts to state a claim to relief that is plausible on its face" must be alleged.[27] Rejected are unsupported allegations, "bald assertions," or "legal conclusions."[28] Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[29] The analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[30] Well-pled facts which only infer the "mere possibility of misconduct," do not show that "'the pleader

---

[24] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).

[25] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

[26] *Twombly*, 550 U.S. at 555.

[27] *Id.* at 570.

[28] *Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.") (citations omitted); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light* Co., 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self-evidently false" are not accepted).

[29] *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (A court is "not bound to accept as true a legal conclusion couched as a factual allegation.").

[30] *Iqbal*, 129 S.Ct. at 1950.

is entitled to relief,'" under Rule 8(a)(2).[31]  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."[32]

## IV.   Analysis

### Count I

Plaintiffs raise two distinct Title VII claims against LMSA, Abboud, and Bittner: hostile work environment sexual harassment and intentional sex discrimination. However, as defendants note in their opening brief, and as plaintiffs stipulate to in their answering brief, Title VII does not provide for individual liability, and the claims against Abboud and Bittner should be dismissed.[33]  Therefore the court will address the Title VII claims only against LMSA.

### Hostile Work Environment

For a hostile work environment action, "a plaintiff must establish 'by the totality of the circumstances, the existence of a hostile or abusive working environment which is severe enough to affect the psychological stability of a minority employee.'"[34]  An environment is "'sufficiently severe or pervasive [when it] alter[s] the conditions of [the plaintiff's] employment and create[s] an abusive working environment.'"[35]  A plaintiff

---

[31] *Id.*

[32] *Id.*

[33] *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("[W]e are persuaded that Congress did not intend to hold individual employees liable under Title VII.").

[34] *Andrews v.City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990) (quoting *Vance v. Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1510 (11th Cir.1989)). *superseded by statute on other grounds by* 42 U.S.C. §§ 1981, 2000e *et seq.* (1991).

[35] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (alterations added).

must prove five elements:  she suffered intentional discrimination because of her gender or race; the discrimination was severe or pervasive; the discrimination detrimentally affected the plaintiff; the discrimination would detrimentally affect a reasonable person in like circumstances; and the existence of *respondent superior* liability.[36]

Title VII does not operate as a "general civility code,"[37] nor "mandate a happy workplace."[38]  "[S]imple teasing, offhand comments, [ ] isolated incidents (unless extremely serious),"[39] "[o]ccasional insults, . . . or episodic instances of ridicule are not enough; they do not 'permeate' the workplace and change the very nature of the plaintiff's employment."[40]

Plaintiffs allege to be "victims of a hostile work environment" due to the relationship between Abboud and Bittner.[41]  The Equal Employment Opportunity Commission's Policy Guidance recognizes that sexual favoritism may be a basis for a hostile work environment claim where both male and female employees found the conduct objectionable, regardless to whom such conduct was directed.[42]  In the only case in which the Third Circuit appears to have considered the issue, the court, applying New Jersey law, found that:

---

[36] *Mandel*, 706 F.3d at 167; *Andrews*, 895 F.2d at 1482; *Subh v. Wal–Mart Stores, Inc.*, C.A. No. 08-410-SLR-LPS, 2009 WL 4015649, at *8 (D. Del. Nov. 19, 2009).
[37] *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1988).
[38] *Jensen v. Potter*, 435 F.3d 444, 451 (3d Cir.2006) (*overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).
[39] *Faragher*, 524 U.S. at 778.
[40] *Jensen*, 435 F.3d at 451.
[41] D.I. 1 at ¶ 60.
[42] EEOC POLICY GUIDANCE ON EMPLOYER LIABILITY UNDER TITLE VII FOR SEXUAL FAVORITISM, EEOC Notice No. 915-048 (Jan. 12, 1990).

[a] sexual relationship between a supervisor and a co-employee could adversely affect the workplace without creating a hostile sexual environment.  A supervisor could show favoritism that, although unfair and unprofessional, would not necessarily instill the workplace with oppressive sexual accentuation.  The boss could treat everyone but his or her paramour badly and all of the subordinates, save the paramour, might be affected in the same way.[43]

Such conduct does not create a claim of sexual harassment.[44]  The facts alleged show that while Abboud's preferential treatment of Bittner may have been unfair and unprofessional, it did not create a "workplace with oppressive sexual accentuation" nor rise to the level of sexual harassment necessary to find a hostile work environment.  No claim is made that plaintiffs were discriminated against because of their gender; rather, they argue unfair treatment because of the relationship between Abboud and Bittner, which fails to meet the criteria for a hostile work environment.

Plaintiffs further allege hostile work environment because of Abboud and Bittner's open display of affection, frank discussion of their relationship in the office, and modification of policy dealing with employee vacation, sick time, and use of cell phones.[45]  Such events do not support a cause of action for hostile work environment because the first element, intentional discrimination because of gender, is absent.[46] Plaintiffs do not allege these incidents were intentionally discriminatory towards them because they are women.

Additionally, plaintiffs allege a hostile work environment because:  "Abboud

---

[43] *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 862 (3d Cir. 1990).
[44] *Id.*
[45] D.I. 1 at ¶¶ 38-40, 45.
[46] *Mandel*, 706 F.3d at 167.

8

openly and without reservation referred to his wife and daughter as 'whores.'"[47]

However, the Third Circuit has found that a plaintiff "cannot meet the first element of a

hostile work environment claim under Title VII . . . causation–*solely* by pointing to

comments that were directed at other individuals."[48]  In addition, the Third Circuit has

noted that  "comments referring to other individuals that were merely overheard by

[plaintiff] are the sorts of 'offhanded comments and isolated incidents' that the Supreme

Court in *Faragher,* cautioned should not be considered severe or pervasive enough to

constitute a hostile work environment."[49]  Since these comments were made about

Abboud's wife and daughter, plaintiffs are unable to show causation in that the

comments would not have been made but for their gender.  Additionally, since Abboud's

comments were made in reference to his wife and daughter, and not  plaintiffs, they are

remarks insufficient to constitute a claim for hostile work environment.

Therefore, the hostile work environment claim should be dismissed.

### Title VII Sex Discrimination

Under Title VII, it is unlawful for an employer "to discriminate against any

individual with respect to [her] compensation, terms, conditions, or privileges of

employment, because of such individual's . . . sex [.]"[50]  *McDonnell Douglas Corp. v.*

*Green* sets out the evidentiary requirements to establish a *prima facie* case of

discrimination:  a plaintiff must show she is a member of a protected class, was qualified

---

[47] D.I. 1 at ¶ 41.
[48] *Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) (emphasis in
original).
[49] *Id.* (internal citation omitted).
[50] 42 U.S.C. § 2000e–2(a)(1).

for the employment position, and suffered an adverse employment action under circumstances that infer discrimination.[51]

Since the *McDonnell Douglas* framework is an evidentiary standard and not a pleading standard, the Third Circuit provided guidance regarding the pleading standard required for employment discrimination in *Golod v. Bank Of America Corp.*[52]  *Golod* held that "to overcome a motion to dismiss . . . [plaintiff] has the burden of pleading sufficient factual matter that permits the reasonable inference that [plaintiff] was terminated or retaliated against" for discriminatory reasons.[53]  To determine whether a complaint complies with the *Iqbal* pleading standard "a court must ignore legal conclusions and . . . consider only those allegations entitled to a presumption of truth . . . . "[54]

The parties do not dispute plaintiffs are members of a protected class based on their gender or they were qualified for their positions.  The issue rests on whether plaintiffs suffered adverse employment action under circumstances that infer discrimination.  Plaintiffs maintain they:

> were the victims of, and suffered intentional discrimination by, LSMA because of the manner in which they were treated differently at work when compared to Bittner who was romantically entangled with Abboud, emotionally, physically, and sexually, to wit:  Bittner was given a job without posting or notice in violation of office policy; given authority as second in charge; given carte blanche over office policy, including personnel policy; given authority to change policy; and otherwise rewarded in the workplace for her romantic and sexual involvement with Abboud.[55]

Plaintiffs further allege they were "either constructively discharged as a result of

---

[51] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).
[52] 403 Fed. App'x 699 (3d Cir. 2010).
[53] *Id.* at 702.
[54] *Id.*
[55] D.I. 1 at ¶ 70.

the work place environment, or, actually terminated because of their disapproval of the environment"[56]  As discussed previously, "preferential treatment on the basis of a consensual romantic relationship between a supervisor and an employee is not gender-based discrimination."[57]  "The law is clear that preferential treatment of a 'paramour' based on a consensual romantic relationship alone is not unlawful gender-based discrimination because such favoritism, while unfair, disadvantages *both* sexes in favor of the 'paramour.'"[58]  Gender based discrimination occurs when "an employer treats men and women differently."[59]  In the absence of any alleged gender discrimination, plaintiffs' Title VII claim based on the romantic relationship between Abboud and Bittner should be dismissed.

### Retaliation

There is a dispute as to whether plaintiffs raised a claim of retaliation.  Retaliation is not specifically mentioned in the complaint.  Defendants contend that no retaliation claim was asserted, and even if it were, Mondero, Sawyer, and Long failed to exhaust their administrative remedies.[60]

Although retaliation was not specifically raised in the complaint, plaintiffs contend that "[a]s a direct and proximate result of the hostile work environment," they were either

---

[56] *Id.* at ¶ 71.

[57] *Miller v. Aluminum Co. of Am.*, 679 F. Supp. 495, 501 (W.D. Pa. 1988) *aff'd*, 856 F.2d 184 (3d Cir. 1988)

[58] *Degidio v. Centro Properties, LLC*, C.A. No. 11-1353, 2013 WL 440131, at *5 (E.D. Pa. Feb. 4, 2013) (emphasis in original).

[59] *Badrinauth v. Metlife Corp.*, C.A. No. 04-2552, 2006 WL 288098, at *4 (D.N.J. Feb. 6, 2006) (citing Lex K. Larson, LARSON ON EMPLOYMENT DISCRIMINATION (2005) § 40.01).

[60] D.I. 14 at 3-4.

constructively discharged or terminated.  To prevail on a claim of retaliation in violation of Title VII, a plaintiff must show that: "1) [s]he engaged in conduct protected by Title VII; 2) [her] employer took an adverse action against [her] either after or contemporaneous with the protected activity; and 3) a causal link exists between [her] protected conduct and the employer's adverse action."[61]

Defendants argue the facts alleged are insufficient, and fair notice concerning the bases for retaliation were not provided.[62]

Plaintiffs plead a plausible claim for relief based on discriminatory retaliation. They allege facts to demonstrate they engaged in conduct protected by Title VII.  Title VII provides that it is unlawful "for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter."[63]  "Opposition" to employment practices includes "informal protests of discriminatory employment practices, including making complaints to management."[64]  To establish a claim of retaliation, a plaintiff  must "act[ ] under a good faith, reasonable belief that a violation existed,"[65] however, when alleging retaliation, a plaintiff "need not prove the merits of the underlying discrimination complaint."[66] Although plaintiffs did not sufficiently assert hostile work environment, they may be victims of retaliation for complaining about such acts if made in good faith.

---

[61] *Slagle v. Cnty. of Clarion,* 435 F.3d 262, 265 (3d Cir. 2006)
[62] D.I. 14 at 6.
[63] *Duffy v. Dep't of State*, 598 F. Supp. 2d 621, 631 (D. Del. 2009) (alterations in original).
[64] *Moore v. City of Philadelphia,* 461 F.3d 331, 343 (3d Cir. 2006), as amended (Sept. 13, 2006)
[65] *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir.1996).
[66] *Moore*, 461 F.3d at 344.

Second, plaintiffs noted that "[their] employer took an adverse action against [them] either after or contemporaneous with the protected activity." All were terminated or constructively discharged after raising concerns of a perceived hostile work environment.

Plaintiffs assert "a causal link exists between [their] protected conduct and the employer's adverse action," by asserting before termination each had excellent performance evaluations.

Such contentions give defendant notice of a potential retaliation claim. "The issue on a motion to dismiss for failure to state a claim is not whether a plaintiff ultimately will prevail, but whether the claimant is entitled to offer evidence to support her claims."[67]

The remaining issue is whether Mondero, Sawyer, and Long failed to exhaust their administrative remedies and are therefore barred from bringing a claim of retaliation.[68] Before filing a claim for employment discrimination under Title VII, "a plaintiff must exhaust her administrative remedies by filing a timely discrimination

_____

[67] *Gavura v. Pennsylvania State House of Representatives*, 55 F. App'x 60, 65 (3d Cir. 2002).

[68] Plaintiffs initially filed their charges of discrimination with the Delaware Department of Labor ("DDOL"), which has the "administrative responsibility for implementing the State Discrimination Act [under 19 DEL. C. § 710 et. seq.,]" and may also process claims of unlawful discrimination under federal law, including Title VII. *Holland v. Zarif*, 794 A.2d 1254, 1257 (Del. Ch. 2002). After right to sue letters were issued by the DDOL, the EEOC adopted the findings of the state agency in Dismissal and Notice of Rights letters. *See* D.I. 19, Exs. D, H, K, N and R. The Notice of Suit Rights portion advised that the documents "will be the only notice of dismissal and of your right to sue" to be forwarded by the EEOC. It further advised of the 90 day limitation in which to file an action under federal law in either state or federal court. *Id.*

charge with the EEOC."[69]  Thereafter, the EEOC investigates the charge and the EEOC

must issue a right to sue letter before a plaintiff may bring a private action.[70]  If a private

action is brought "the ensuing suit is limited to claims that are within the scope of the

initial administrative charge"[71] and those claims "'which can reasonably be expected to

grow out of the charge of discrimination.'"[72]  Although a later civil action is limited to

claims within the scope of the initial administrative charge, merely failing to check a box

on the charge form does not prevent a plaintiff from bringing a subsequent claim.[73]  It

does prevent "greatly expand[ing] an investigation simply by alleging new and different

facts when [s]he [is] contacted by the Commission following [her] charge."[74]

     In *Hicks*, the Third Circuit stated "charges are most often drafted by one who is

not well versed in the art of legal description . . . .  [T]he scope of the original charge

should be liberally construed."[75]  Interpreting Mondero, Sawyer, and Long's

DDOL/EEOC charges liberally, their retaliation claims are within the scope of their

respective charges.  In *Anjelino v. N.Y. Times. Co.,*[76] the Third Circuit found that a

hostile work environment claim fell within the scope of the initial EEOC charge, because

the plaintiff used the term "abusive atmosphere" which is interchangeable with "hostile

---

[69] *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413 (3d Cir. 2010) (citing  42
U.S.C. §§ 2000e–5(b), (e)(1), (f)(1)).
[70] *Id.*
[71] *Id.* at 413-14 (quoting *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir.1996)).
[72] *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 966 (3d Cir.1978) (quoting
*Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir.1976)
[73] *Barzanty*,  361 F. App'x at 414.
[74] *Id.*
[75] *Hicks*, 572 F.2d at 965.
[76] 200 F.3d 73 (3d Cir. 1999).

work environment."[77]  *Howze v. Jones & Laughlin Steel Corp.*[78] granted the plaintiff

leave to amend her complaint to add a claim of retaliation despite not raising it in the

EEOC charge because "Howze's new retaliation claim 'may fairly be considered [an]

explanation[ ] of the original charge . . . .'"[79]  However, in *Barzanty*, the court held that a

charge of harassment did not include a hostile work environment claim because "there

is no analogous language in Barzanty's EEOC charge which could give rise to a hostile

work environment claim."[80]

The instant matter is more analogous to *Anjelino* and *Howze* than *Barzanty*.

Here, a close nexus exists between the charges instituted by Mondero, Sawyer and

Long to cover retaliation, and provide sufficient notice.  Each charge of discriination

separately addresses each plaintiff's discharge from LSMA.  It follows, therefore, that a

claim of retaliation could be brought.  As explained in *Howze*, a charge of retaliation in

the complaint may be considered an explanation of the original charges.  As a result,

the motion to dismiss plaintiffs' retaliation claim should be denied.  Plaintiffs shall

amend the complaint alleging sufficient facts on which each base their respective claims

for retaliation, including the applicable statutes, by the date specified in the attached

order.

**Count II**

In Count II, plaintiffs assert a state law claim of sexual harassment and hostile

---

[77] *Id.* at 93.

[78] 750 F.2d 1208 (3d Cir. 1984).

[79] Id. at 1212 (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir.1976)).

[80] *Barzanty*, 361 F. App'x at 414.

work environment under 19 DEL. C. § 711.  "Delaware State law prohibits employment discrimination in terms almost identical to Title VII itself."[81]  Plaintiffs admit that Title VII and 19 DEL. C. § 711 are "almost identical" and agree "if the Title VII claims survive this pending motion to dismiss, then so must the State claims."[82]  Stated in the alternative, however, if the Title VII claims do not survive, then the state claims are subject to dismissal based on the same rationale.  Therefore, for the reasons addressed in Count I, the state law gender discrimination claims should be dismissed.

### Counts III and IV

In Count III, Howett, Sawyer, and Long allege Federal Age Discrimination under 29 U.S.C. § 621 *et seq.*  As noted by defendants in their motion, and admitted by plaintiffs in their answering brief, this statute does not provide for individual liability. Therefore, this count against Abboud and Bittner should be dismissed.

In Count IV, Miller raises racial discrimination and hostile work environment under Title VII.  As previously discussed, the parties agree that Title VII does not provide for individual liability, requiring dismissal of Count IV against Abboud and Bittner.

### Count V

In this count, Miller, Sawyer, and Long argue breach of the implied covenant of good faith and fair dealing in employment.[83]  "Although Delaware is an at-will employment state, an employer has an implied covenant of good faith and fair dealing

---

[81] *Cannon v. State of Del.*, 523 F. Supp. 341, 344 (D. Del. 1981).
[82] D.I. 13 at 7.
[83] D.I. 1 at ¶ 16.

with every employee, and a claim can be brought for a breach of this covenant."[84]  A

breach of this covenant may occur in four limited circumstances:

> (1) termination of employment when the termination violates public policy;
> (2) where the employer misrepresents important facts, inducing an
> employee either to stay or accept a new position; (3) when an employer
> uses its superior bargaining power to deprive the employee of clearly
> identifiable compensation related to the employee's past services; or (4)
> the employer falsifies or manipulates employment records to create
> fictitious grounds for termination.[85]

Plaintiffs argue that their termination violates the public policy element, relying on

LSMA's Policy Handbook which contains "office policy on a number of issues, including

but not limited to, hiring, discipline, and reporting of grievances;"[86] and defendants

"created a work environment that became hostile because of the favoritism given Bittner

by Abboud in direct violation of said LSMA policies."[87]  Plaintiffs describe the work

environment as offensive, resulting from Abboud and Bittner's relationship and

complained about its effects on the workplace to them.[88]  They further maintain their

complaints led to their termination.[89]

To demonstrate a breach of the covenant of good faith and fair dealing under the

public policy element:  "(i) the employee must assert a *public interest* recognized by

some legislative, administrative or judicial authority and (ii) the employee must occupy a

position with responsibility for advancing or sustaining that particular interest."[90]

---

[84] *Carrol v. ABM Janitorial Services-MID Atlantic, Inc.*, 970 F. Supp. 2d 292, 301
(D. Del. 2013) (citing *E.I. DuPont Nemours v. Pressman*, 679 A.2d 436 (Del. 1996)).
[85] *See Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000).
[86] D.I. 1 at ¶¶ 16, 110.
[87] *Id.* at ¶ 111.
[88] *Id.* at ¶ 112.
[89] *Id.* at ¶ 113.
[90] *Pressman*, 679 A.2d at 441-42 (emphasis added).

Although not entirely clear, the public interest plaintiffs appear to assert is retaliation, that is, they were terminated for complaints of a purported violation of federal law.[91] Defendants rely on *Finch v. Hercules Inc.*[92] and *Williams v. Caruso*[93] for their argument that no public interest is claimed. In *Finch*, this court found that the Delaware Supreme Court would not carve out a public policy exception to the at-will doctrine when a statutory remedy exists under state law, such as 14 DEL. C. § 710 *et seq.*[94] Subsequently, in *Williams*, the court reached the same conclusion on a retaliatory discharge claim because Delaware's employment discrimination statute covered retaliatory discharge.[95]

> In *Wilcoxon v. Red Clay Consolidated School Dist. Bd. of Educ.*, this court noted:
>
> In 2004, the Delaware legislature amended the statute concerning employment discrimination, stating that the statute was the 'sole remedy for claims alleging a violation of this subchapter to the exclusion of all other remedies.' 19 DEL. C. § 712(b) (2005). The synopsis of the Senate Bill expressly supercedes the court's holding in *Schuster*, stating, 'This bill is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in *Schuster v. Derocili* . . . .'[96]

Since there is a statutory remedy for retaliation, and since plaintiffs' basis for this Count is the LSMA Policy Handbook without any factual contentions demonstrating a public interest, plaintiffs' claim for breach of covenant of good faith and fair dealing

---

[91] D.I. 13 at 7.
[92] 809 F. Supp. 309 (D. Del. 1992).
[93] 966 F. Supp. 287 (D. Del. 1997).
[94] *Finch*, 809 F. Supp. at 312.
[95] *Williams*, 966 F. Supp. at 292.
[96] *Wilcoxon v. Red Clay Consolidated Sch. Dist. Bd. of Educ.*, 437 F. Supp. 2d 235, 247 (D. Del. 2006).

should be dismissed.

**Count VI**

In their answering brief, plaintiffs voluntarily withdrew the ERISA violations raised by Mondero and Howett.[97]  Therefore, Count VI is dismissed.

**Count VII**

Mondero and Howett raise a claim for conversion of 401K funds relying on the same facts alleged in support of the ERISA violation under Count VI.[98]  They assert "an unknown sum" was removed from their pension accounts after termination.[99]  Defendants maintain Count VII should be dismissed because an "action for conversion will not lie to enforce a claim for the payment of money."[100]  Plaintiffs acknowledge that defendants are correct on the law, but submit Count VII is merely mislabeled, and their claim is for restitution.  Defendants counter the claim should be still dismissed since restitution is a type of remedy and not a civil cause of action.[101]  They also maintain that "restitution is what the defendant owes to a victim because of the defendant's criminal conduct."[102]

By voluntarily dismissing their ERISA claims and substituting a state law claim for either conversion or restitution, plaintiffs attempt to circumvent the broad preemption

---

[97] D.I. 1 at ¶ 114-17.

[98] *Id.* at ¶¶ 118-21.

[99] *Id.* at ¶ 120.

[100] D.I. 11 at 9 (citing *AM Gen. Holdings LLC on behalf of Ilshar Capital LLC v. Renco Grp. Inc.*, C.A. No. 7639-VCN, 2013 WL 5863010, at *16 (Del. Ch. Oct. 31, 2013)).

[101] D.I. 14 at 8 (relying on *Lingo v. Lingo*, 3 A.3d 241, 244 (Del. 2010); *Preferred Invs. Serv., Inc. v. T & H Bail Bonds, Inc.*, C.A. No. 5886-VCP, 2013 WL 3934992, at *25 (Del. Ch. July 24, 2013)).

[102] *Id.* (citing *Mott v. State*, 49 A.3d 1186, 1190 (Del. 2012)).

powers of ERISA.  In *Aetna Health Inc. v. Davila*,[103] the United States Supreme Court explained "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. . . .  ERISA includes expansive preemption provisions, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern."[104]  Section 514 of ERISA preempts "any and all State laws" that relate to any covered employee benefit plan,[105] while § 502(a)(1)(B) authorizes a participant or beneficiary to institute proceedings to recover benefits, enforce rights, or to clarify rights to future benefits under a plan.[106]  That section covers 401K plans.[107]  Section 502(a) further provides "any state-law cause of action, that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."[108]

The preemptive powers of ERISA under § 502(a)(1)(B) converts state causes of action into federal matters.[109]  "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."[110]  Here, plaintiffs originally

---

[103] 542 U.S. 200 (2004).
[104] *Id.* at 208.
[105] 29 U.S.C. § 1144.
[106] 29 U.S.C. § 1132(a)(1)(B).
[107] *See, e.g., Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 308 (D.N.J. 2013) ("The 401(k) plan to which Torsiello refers in the Complaint seems to be covered under ERISA because it typically provides for retirement income and a medical practice is evidently engaged in commerce.").
[108] *Davila,* 542 U.S. at 209.
[109] *Id.*
[110] *Id.* at 210.

raised ERISA under Count VI before voluntarily dismissing it.  They now attempt to proceed with a state law cause of action regarding a 401K plan.  Since the state claim initially should have been brought under ERISA, it is preempted and converted into a federal action which has been voluntarily dismissed.  Therefore, because plaintiffs cannot proceed with a state law cause of action regarding their 401K and have voluntarily dismissed their ERISA claims in Count VI, Count VII should be dismissed.

**Count VIII**

Howett raises a claim of conversion in Count VIII, maintaining that Abboud or Bittner, by fraud, forgery, or misrepresentation, represented that he/she was Howett to "collect and intercept . . . incentive payments" of $29,750.00 due to Howett under the Medicare & Medicaid EMR Incentive Program Registration and Attestation System.[111]

Defendants reiterate that an action for conversion does not lie for payment of money.[112]  Howett argues although a claim for conversion may not exist, she sufficiently alleged an action in restitution.[113]  Defendants claim that restitution is a remedy and not a valid cause of action and warrants dismissal.[114]

As discussed previously, restitution is a remedy, not a cause of action.  FED. R. CIV. P. 8(e), however, instructs that "[p]leadings must be construed as to do justice."[115] Howett has pled fraud or misrepresentation, for which restitution may be a remedy.

---

[111] D.I. 1 at ¶¶ 124-25.
[112] D.I. 11 at 10.
[113] D.I. 13 at 8.
[114] D.I. 14 at 8.
[115] FED. R. CIV. P. 8(e).

Fraud, however, must be pled with particularity under FED. R. CIV. PRO. 9(b).[116]  To

satisfy Rule 9(b) in conjunction with Rule 8(a)(2),[117] "the requirement of particularity . . .

does not entail an exhaustive cataloging of facts but only sufficient factual specificity to

provide assurance that plaintiff has investigated . . . the alleged fraud and reasonably

believes that a wrong has occurred."[118]  The complaint contains a short and plain

statement of some basis for Howett's claim suggesting entitlement to relief.  Therefore,

if Howett intends to proceed with this Count, she shall amend her complaint within the

time frame provided herein raising a specific cause of action and the bases consistent

with Rules 8 and 9.

### Colorado River Abstention Doctrine

Defendants contend the *Colorado River* abstention doctrine operates to permit

the court to abstain from exercising jurisdiction over Howett's 401K claims in Counts VI

and VII because she is presently litigating similar issues in the Delaware Superior

Court.[119]  Since Howett voluntarily dismissed Count VI and the court recommends

dismissal of Count VII, this argument is moot and presently need not be addressed.

## IV.  Order and Recommendation Disposition

Consistent with the findings contained in this Report and Recommendation, IT IS

RECOMMENDED that defendants' motion to dismiss (D.I. 10) be GRANTED as to

counts I, II, III and IV with respect to Defendants Abboud and Bittner individually, and

---

[116] *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).
[117] Rule 8(a)(2) provides "a pleading shall contain . . . a short and plain statement of the claim."  *Gissen v. Colorado Interstate Corp.*, 62 F.R.D. 151, 154 (D. Del. 1974).
[118] *Temple v. Haft*, F.R.D. 49, 53 (D. Del. 1976).
[119] D.I. 11 at 11.

Counts V, VI, and VII with respect to all defendants and DENIED as to Count VIII.

IT IS FURTHER RECOMMENDED that defendants' motion to dismiss Counts I and II be GRANTED regarding sex discrimination and hostile work environment and DENIED as to retaliation.

IT IS FURTHER RECOMMENDED that for retaliation and Count VIII, plaintiffs shall have until January 16, 2015 in which to amend their complaint consistent with this Report and Recommendation.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(a) and D. DEL. LR 72.1. The parties may serve and file specific written objections within fourteen days after being served with a copy of this Report and Recommendation. The objections and response to the objections are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non–Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date: December 9, 2014

/s/ Mary Pat Thynge
UNITED STATES MAGISTRATE JUDGE