IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DR. NANCY MONDERO, JUDY L.
HOWETT NP, MARGARET M. SAWYER,
TANIKKA R. MILLER, and MARIAN L.
LONG,

                Plaintiffs;

v.

LEWES SURGICAL & MEDICAL
ASSOCIATES P.A., *a Delaware Professional
Association*, SEMAAN M. ABBOUD M.D.,
BETH E. BITTNER,

                Defendants.

Civil Action No. 14-588-RGA

MEMORANDUM

The five plaintiffs in this action, Dr. Nancy Mondero, Judy L. Howett NP, Tanikka R. Miller, Margaret M. Sawyer, and Marian L. Long, collectively sue Lewes Surgical & Medical Associates, P.A. for "Count I – Title VII of the Civil Rights Act Retaliation" and "Count II – Retaliation Pursuant to 19 Del. C. § 711(f)." (D.I. 23, 47). Plaintiff Howett individually sues Lewes Surgical & Medical Associates, P.A., Dr. Semaan M. Abboud, and Beth E. Bittner for "Count VIII – Fraud / Restitution of Meaningful Use Funds." (D.I. 23).

Presently before the Court are Defendant Dr. Abboud and Lewes Surgical's ("Defendants") Motion for Summary Judgment on all counts against all Plaintiffs (D.I. 61) and related briefing (D.I. 62, 64, 66) and Plaintiff Howett's Motion for Partial Summary Judgment on Count VIII against Lewes Surgical (D.I. 55) and related briefing (D.I. 59, 63, 68). For the reasons set forth below, Defendants' Motion for Summary Judgment (D.I. 61) is **GRANTED** as

1

to Counts I and II and **DENIED** as to Count VIII. Plaintiff's Motion for Partial Summary Judgment (D.I. 55) is **DENIED**.

I.  **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*,

2

476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## II. Analysis

### A. Count I – Title VII of the Civil Rights Act – Retaliation

Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . .

42 U.S.C. § 2000e-3(a). "The allocation of the burden of proof for . . . federal . . . retaliation claims follows the familiar Title VII standards." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). "These standards will vary depending on whether the suit is characterized as a 'pretext' suit or a 'mixed motives' suit." *Id.*

Both parties appear to agree that this is a "pretext" suit (D.I. 62 at 5; D.I. 64 at 10–11), and thus I follow the standards set forth by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Woodson v. Scott Paper Co.*, 109 F.3d at 920.

I begin with the *prima facie* case. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006).

#### 1. Engaged in Protected Activity

3

"With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who . . . oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Id.* at 341. "Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Id.*

Plaintiffs argue that they engaged in protected activity in the form of bringing grievances regarding violations of company policy by Bittner and Dr. Abboud to the attention of Bittner and Dr. Abboud. (D.I. 64 at 11). They argue that they did so "at various times and especially on November 1, 2012." (*Id.*). Plaintiffs have documented that the November 1, 2012 meeting did take place. (D.I. 64-1, Exh. G). At this meeting, concerns appear to have been raised about violations committed by Bittner and Dr. Abboud of company policies, specifically, the (1) "Chain of Command" policy, (2) "Conflict Resolution" policy, and (3) "Sexual Harassment" policy. (D.I. 64-1, Exh. A, B, D, G. and J ¶ 6).

Plaintiffs Mondero and Howett have sufficiently demonstrated for summary judgment purposes that they engaged in protected activity on November 1, 2012. It appears that Mondero and Howett were the ones who vocalized these concerns to Dr. Abboud. (D.I. 23 ¶ 69; D.I. 64-1, Exh. J ¶ 6). Mondero and Howett sufficiently demonstrated that they opposed unlawful activity under Title VII and held an objectively reasonable belief, in good faith, that the activity they opposed was unlawful under Title VII. This is especially the case to the extent the concerns related to the "Sexual Harassment" policy. *See Moore v. City of Philadelphia*, 461 F.3d at 341.

I also find that, sufficient for summary judgment purposes, Plaintiffs Sawyer, Miller, and Long engaged in protected activity on November 1, 2012. It appears that Sawyer, Miller, and Long were silent at this meeting, but instead relied on their supervisors, Mondero and Howett, to

4

communicate and represent their concerns. (D.I. 23 ¶ 70; D.I. 64-1, Exh. J ¶ 6). Their apparent solidarity with Mondero and Howett falls under the plain meaning of "opposing" the employer's activity. They also sufficiently demonstrated that they held an objectively reasonable belief, in good faith, that the activity they opposed was unlawful under Title VII.

Plaintiffs have not sufficiently demonstrated for summary judgment purposes that they engaged in protected activity at times other than at this one meeting. Plaintiffs' argument in the briefing asserts that they engaged in protected activity "at various times." (D.I. 64 at 11) This is insufficient without exhibits or declarations specifically indicating what and where these other times were. I do not see such evidence. Defendants point out this lack of evidence. (D.I. 62, Exh. D). Plaintiffs concede that "[n]o diaries or logs were kept by either Plaintiff and therefore neither Plaintiff can offer the dates and/or times of any of the occurrences." (D.I. 64 at 8).

### 2. Adverse Employment Action

"[A] plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341.

Plaintiffs' respective discharges adequately constitute adverse employment actions for summary judgment purposes. (*See generally* D.I. 62, 66). For Plaintiffs Mondero, Howett, Miller, and Sawyer, their discharges took place on January 10, 2013. (D.I. 23 at 9). Plaintiff Long was discharged on February 19, 2013. (*Id.*). Thus, I proceed to causation.

### 3. Causal Connection

"[A] plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore*,

5

461 F.3d at 341–42. "Many may suffer . . . harassment at work, but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief." *Id.* at 342. "This third element identif[ies] what harassment, if any, a reasonable jury could link to a retaliatory animus." *Id.* (internal quotations omitted). "The ultimate question in any retaliation case is an intent to retaliate *vel non.*" *Id.*

Here, Plaintiffs proffer timing evidence, a lack of negative performance evaluations, an Order of Judgment, and Unemployment Insurance Appeals Decisions to support causation. As to timing, Plaintiffs argue that the time difference between the November 1, 2012 meeting and their respective discharges on January 10, 2013 (70 days) and February 19, 2013 (110 days) supports a causal connection for the *prima facie* case of retaliation. (D.I. 64 at 12). Here, the timing evidence is not very probative because it is relatively removed from the adverse employment action. In *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989), "[Plaintiff] demonstrated the causal link" by showing that "the discharge followed rapidly, only two days later, upon [defendant's] receipt of notice of [plaintiff's] EEOC claim." Unlike in *Jalil*, here the 70 and 110 day separations are weak evidence of retaliatory animus. Granted, the timing evidence here is comparable to that of *Fasold*, but that case is distinguishable because strong evidence of retaliatory animus from conversations between the employer and employee was also presented. *See Fasold v. Justice*, 409 F.3d 178, 189–90 (3d Cir. 2005).

The lack of negative performance evaluations is not probative of retaliatory animus.

Plaintiffs proffer evidence of an Order of Judgment finding that Mondero and Howett had their contracts breached by their earlier-than-contractually-required discharge against Lewes Surgical. (D.I. 64-1, Exh. K). This is not probative of retaliatory animus as nothing in the Order indicates what motivated the discharge. *(See id.).*

6

Plaintiffs also provide evidence of Unemployment Insurance Appeals Decisions for Howett, Sawyer, and Miller where the referees found that they were not discharged for "just cause" under 19 Del. C. § 3314. (*Id.*). The referees made no findings that indicate that the discharges were motivated out of retaliatory animus. (*Id.*). Indeed, the referees make findings which suggest the opposite conclusion. (*Id.*). For Sawyer, the referee noted that she "was discharged after several incidents that the employer interpreted as unprofessional and unacceptable." (*Id.*). For Howett, the referee noted that she was discharged "for decreased financial revenue, continuous unprofessional conduct in the workplace and general inappropriate comments made over the past months." (*Id.*). For Miller, the referee noted that the "policy manual was over a decade old, and it was unclear (even to the employer) which policies were still applicable" and that she was discharged "for a variety of reasons related to her behavior and performance." (*Id.*). This evidence is thus not probative of retaliatory animus.

In sum, I find that Plaintiffs have failed to put forward sufficient evidence of causation to meet their *prima facie* case.[1] Therefore, I grant Defendants' summary judgment motion on the Title VII retaliation claim.

**B.     Count II – Retaliation Pursuant to 19 Del. C. § 711(f)**

Section 711(f) provides:

---

[1] Furthermore, although I do not reach the question as to whether Defendants successfully rebut the *prima facie* case, I note that Defendants provide evidence of the lack of retaliatory animus in the discharges of at least Plaintiffs Mondero and Howett. At the time of discharge, Defendants show that Mondero and Howett had both already tendered notices to leave at a future date. (D.I. 62, Exh. A–B, E & F). Defendants show that Mondero's notice to leave stated that she intended "to open [her] own practice in or near Lewes Delaware" and intended to take patients and their charts with her. (*Id.*, Exh. B). Defendants also cite to "lack of financial revenue, continuous unprofessional conduct in the work place and general inappropriate comments that have been made over the past few months" as reasons for the discharges. (*Id.*, Exh. E & F). Defendants note that the discharges were to redress a work environment which "has become intolerable and unproductive" and that this was "the best decision for the practice." (*Id.*).

7

> It shall be an unlawful employment practice for any employer . . . to discharge . . . any individual . . . because such person has opposed any practice prohibited by this subchapter . . . .

19 Del. C. § 711(f). Cases arising under § 711 follow "federal decisions construing and applying Title VII of the Civil Rights Act of 1964." *See Riner v. Nat'l Cash Register*, 434 A.2d 375, 376 (Del. 1981). The statutory language providing for § 711(f) retaliation essentially mirrors that of Title VII retaliation. *Compare* 19 Del. C. § 711(f), *with* 42 U.S.C § 2000e-3(a). Because I am granting summary judgment on the Title VII retaliation claim, summary judgment on the § 711(f) retaliation claim is appropriate.

### C.  Count VIII – Fraud / Restitution of Meaningful Use Funds

The relevant facts are as follows. Plaintiff Howett is a licensed nurse practitioner. (D.I. 59, Exh. A). Plaintiff alleges that "licensed medical providers are paid an incentive for keeping and preparing electronic medical records through the 'Medicare & Medicaid EMR Incentive Program Registration and Attestation System.'" (D.I. 23 ¶ 96). Plaintiff alleges that Dr. Abboud or Bittner "forged or otherwise misidentified himself/herself through e-mail or otherwise so as to collect and intercept said incentive payments on behalf of [] Howett in the amount of $29,750.00 . . . ." (*Id.* ¶ 97). Both Defendants and Plaintiff appear to agree that to the extent there was fraud, it was perpetrated by Defendants on Medicare/Medicaid, not Plaintiff. (D.I. 62 at 17 ("The allegations, if proven, would give rise to a lawsuit for fraud from Medicaid and not Howett."), D.I. 64 at 13, D.I. 66 at 8).

Fraud under Delaware common law requires that: "(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff

8

acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005).

Plaintiff Howett fails to establish the first element because Howett does not provide evidence that Defendants falsely represented or omitted facts that Defendants had a duty to disclose to Plaintiff. Because both Defendants and Plaintiff appear to agree that to the extent there was fraud, it was perpetrated by Defendants on Medicare/Medicaid and not Plaintiff, this element is not established. (D.I. 62 at 17, D.I. 64 at 13, D.I. 66 at 8).[2]

To the extent Plaintiff seeks to argue that she is also seeking restitution as a cause of action, restitution is a remedy, not a cause of action. *See Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1063 (Del. 1988) ("The remedy of restitution may be invoked regardless of whether or not the party retaining the benefit is found to be a wrongdoer."). *See also Munoz v. MacMillan*, 124 Cal. Rptr. 3d 664, 675 (Cal. Ct. App. 2011) ("There is no freestanding cause of action for 'restitution' in California.").

Grant of summary judgment on the fraud claim for Defendants would typically be appropriate, but I nonetheless decline to do so out of basic fairness. *See In re Franklin Nat. Bank Sec. Litig.*, 478 F. Supp. 210, 223 (E.D.N.Y. 1979) ("Satisfying the basic requirements of the rule does not guarantee that the motion will be granted: 'Even in cases where the movant has technically discharged his burden, the trial court in the exercise of a sound discretion may decline to grant summary judgment.'"). Nowhere in Defendants' briefing do they rebut the core argument that the money is rightfully Plaintiff's. (D.I. 62, 63, 66). It appears to me that had Plaintiff more adequately pleaded her cause of action, she might have prevailed on her Motion

---

[2] There are no facts or allegations supporting Plaintiff's agency theories. (*See generally* D.I. 23; D.I. 59).

9

for Partial Summary Judgment. To avoid injustice, I decline to grant summary judgment to Defendant at this time. Plaintiff Howett should promptly consider a Rule 15 motion to amend her claim to state an actionable theory.[3]

I am denying both Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment as to Count VIII.

## III.   Conclusion

A separate order will be entered.

*[signature]*
United States District Judge

---

[3] It is possible that replevin may be more viable. *See, e.g., Harlan & Hollingsworth Corp. v. McBride*, 69 A.2d 9, 11 (Del. 1949).

10