IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DR. NANCY MONDERO et. al.,

                Plaintiffs;

v.

LEWES SURGICAL & MEDICAL
ASSOCIATES, P.A., et. al.,

                Defendants.

Civil Action No. 14-00588-RGA

## MEMORANDUM OPINION

Dean A. Campbell, Esq., Georgetown, DE.
Attorney for Plaintiffs.

Gregory D. Stewart, Esq., Middletown, DE.
Attorney for Defendants.

March 29, 2018

*signature* Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment. (D.I. 96). The motion has been fully briefed. (D.I. 96, 97 & 98). For the reasons set forth herein, the Plaintiff's motion for Partial Summary Judgment on Count X (Breach of Fiduciary Duty) is GRANTED, Plaintiff's motion for Partial Summary Judgment on Count XI (Intentional Interference with Business Relations) is DENIED, and Defendant is DENIED leave to amend the answer to the second amended complaint.

## I. BACKGROUND

Plaintiff Judy Howett filed this case on May 9, 2014. (D.I. 1). Defendant Lewes Surgical & Medical Associates, P.A. ("LSMA") moved to dismiss some of the claims. After a ruling on the motion to dismiss, Howett amended her complaint. (D.I. 23). On July 15, 2016, the parties filed cross-motions for Summary Judgment, with LSMA moving for Summary Judgment on Counts I and II, which was granted, and with Howett moving for Summary Judgment on Count VIII, which was denied. (D.I. 55); (D.I. 61); (D.I. 71, pp. 1-2). The Court granted Howett leave to amend the pleadings on January 17, 2017. (D.I. 85). Howett filed a Second Amended Complaint, which now included other legal theories as alternatives to Count VIII's theory. (D.I. 86). These additional counts included Count X, "Breach of Fiduciary Duty," and Count XI, "Intentional Interference with Business Relations." (D.I. 86, ¶¶ 108-117). LSMA filed an Answer on January 31, 2017 and asserted twenty-two defenses, none of which were collateral estoppel, res judicata, or "assignment of rights." (D.I. 89). On July 31, 2017, Howett filed the Motion for Partial Summary Judgment on Counts X and XI, which is presently at issue. (D.I. 96).

1

Under the American Recovery and Reinvestment Act of 2009, eligible professionals are offered incentive payments for implementing electronic medical records ("the Incentive Program"). 111 P.L. 5, 123 Stat. 115. An "eligible professional" under the Act is defined as a physician, dentist, nurse practitioner, certified nurse mid-wife, and in some cases, physicians' assistants. 123 Stat. 115 at 491. Howett, a nurse practitioner, and thus an eligible professional under the Incentive Program, began employment with LSMA in 2002. (D.I. 96-3, Exh. D, ¶ 1). Howett and LSMA signed an employment agreement on December 29, 2008. (D.I. 97-1). Howett claims that since the employment contract was signed before the existence of the Incentive Program, the contract did not reference the Incentive Program. (D.I. 96, p.3). Howett states that LSMA did not install software to implement the Incentive Program until 2012. (D.I. 96, p. 3). LSMA hired M3 Healthcare Solutions (a/k/a Arete) to complete the Incentive Program registration process for each individual practitioner. (D.I. 86, ¶ 105; D.I. 96-3, Exh. C, ¶ 4).

Howett tendered her resignation on November 12, 2012, to be effective on March 29, 2013, but was terminated by LSMA on January 10, 2013. (D.I. 86 ¶ 54(b)). On or about March 23, 2013, the LSMA office manager, Beth Bittner, was instructed by LSMA's principal, Dr. Seaman Abboud, to access Howett's account to check on the status of the Incentive Program Funds available and to cause those funds to be disbursed into LSMA's bank account. (D.I. 96-3, Exh. C, ¶¶ 5, 9). LSMA disputes the fact that Howett had no part in her own registration for the Incentive Program. (D.I. 97, p. 6). However, it is not contested that Bittner had the credential information required to access Howett's account after her termination, including her log-in information, her social security number, and other sensitive information. (D.I. 96-3, Exh. C, ¶ 4). The funds available in Howett's account amounted to $29,750. (D.I. 96-3, Exh. C, ¶ 8; Exh. E).

2

There is no dispute that, absent some assignment of rights, the Incentive Program Funds belong to Howett as an eligible professional under the Incentive Program. (D.I. 96, p. 8; D.I. 97, p. 5). Howett claims that LSMA transferred Howett's Incentive Program Funds into its own bank account (D.I. 86, ¶ 97) and that LSMA has never denied that transfer of funds (D.I. 96, p. 9). LSMA has not put forth any evidence to suggest that Howett assigned her funds to LSMA, and Howett denies any such assignment. (D.I. 96-3, Exh. D, ¶ 8). There is no disputed material fact that would prevent granting summary judgment for Howett on Count X, "Breach of Fiduciary Duty." Granting LSMA's request for leave to amend to add a twenty-third defense would be futile in light of the lack of any evidence of an assignment or other valid defense.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving

3

party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### III. DISCUSSION

LSMA argues that there was no breach of fiduciary duty or intentional interference with business relations because Howett's Incentive Program funds were assigned to LSMA as part of Howett's "overall compensation structure." (D.I. 97, pp. 9-11). However, the Incentive Program was not in existence at the time Howett signed the employment contract with LSMA in 2008. Thus, the Incentive Program was not mentioned anywhere in the employment contract. The Incentive Program Funds were therefore not contemplated by the employment contract. The idea that Howett assigned her Incentive Program Funds to LSMA a year before the Incentive Program came into existence, and four years before LSMA adopted the Incentive Program, is untenable.

4

A clause from the 2008 employment contract reads:

> Employee[ ] is entitled to a bonus or additional compensation of 40% of the money or the fees actually received by Employer, which are generated from the services performed by the Employee during the applicable calendar year of this Agreement that exceed the total cost of the Employer attributable to Employee, including but not limited to Employee's salary, payroll taxes, employer pension contributions, sick pay, employer emoluments, insurances, and office staff assigned to Employee, etc.

(D.I. 97-1, Exh. A, p. 2). LSMA, in its brief, argues that the "including but not limited to" language in the employment contract "represents that the contractual agreement between the parties controlled the distribution of the [Incentive Program] funds as a part of the money or fees actually received by Howett." (D.I. 97, p. 5). Howett notes that a bonus based on "fees actually received by [e]mployer" would not have included the Incentive Program Funds, since Bittner did not transfer that money into the LSMA account until March, approximately two months after Howett's termination. (D.I. 98, p. 4). Howett contends that "[i]t is illogical to think that [she] would assign her [Incentive Program Funds] after her termination of employment." (D.I. 98, p. 5). Since there is no language in the record, including the 2008 employment agreement, that suggests an assignment of the Incentive Program Funds, LSMA's argument that the 2008 contract acted as an assignment of rights is unsubstantiated. Further, the employment agreement was signed before the existence of the Incentive Program, which indicates that an assignment of rights was not contemplated by that contract.

## A. Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty, a plaintiff must show "(i) that a fiduciary duty exists; and (ii) that a fiduciary breached that duty." *Legatski v. Bethany Forest Assoc., Inc.*, 2006 WL 1229689, at *3 (Del. Super. Ct. Apr. 28, 2006).

A fiduciary duty exists "where one person reposes special confidence in another, or where a special duty exists on the part of one person to protect the interests of another, or when

5

there is a reposing of faith, confidence, and trust, and the placing of reliance by one person on the judgment and advice of another." *Lank v. Steiner*, 213 A.2d 848, 852 (Del. Ch. 1965), *aff'd*, 224 A.2d 242 (Del. 1966). Here, Howett supplied to Bittner sensitive personal information, including her National Provider Identifier ("NPI") number, social security number, and log-in information. (D.I. 86, ¶ 109; D.I. 96-3, Exh. C, ¶ 4). Howett alleges that, "as an agent in possession of confidential information, LSMA operated in a fiduciary relationship as to Howett." (D.I. 86, ¶ 111). When Howett provided LSMA with her confidential information and control over her Incentive Program Funds, LSMA became Howett's fiduciary.

The American Recovery and Reinvestment Act adopted the Incentive Program to compensate eligible medical providers for adopting electronic health records. 123 Stat. 115, 489-90. The intended beneficiaries of the Incentive Program were providers like Howett, not practice groups like LSMA. Since the Incentive Program was created to award payments to individual providers, it can be inferred that LSMA undertook the responsibility of registering Howett for the Incentive Program primarily for Howett's benefit. LSMA obtained Howett's information in order to complete the registration process on her behalf, and further went on to control the account and any accumulated funds.[1] (D.I. 86, ¶¶ 109-112). Thus, Howett has put forth sufficient facts to support the conclusion that LSMA breached its fiduciary duty to Howett.

LSMA contends that Howett assigned the funds to LSMA "to be included in her overall compensation as defined by her contract which were subject to the bonus structure agreed to by the parties." (D.I. 97 at 5-6, 10; D.I. 97-1). LSMA contends that this assignment creates a

---

[1] LMSA contends that "registering for EHR was completed by Howett with assistance from . . . LSMA staff." (D.I. 97 at 6). LSMA asserts that this contention "creates a dispute of material fact." (*Id.* at 10). However, LSMA cites no evidence to support its contention. Furthermore, LSMA does not dispute that the Incentive Program is primarily for Howett's benefit, or that LSMA went on to control the account and any accumulated funds. (*Id.* at 5). Accordingly, any dispute as to as to who actually registered Howett for the Incentive Program is not material.

6

dispute of material fact as to whether it breached a fiduciary duty. (*Id.* at 10). However, LSMA has not put forth specific facts to suggest that Howett assigned her rights to the Incentive Program Funds to LSMA. LSMA does not suggest that there was any relevant agreement other than the 2008 contract. Thus, there is no evidence that creates a dispute of material fact as to whether LSMA breached its fiduciary duty by claiming the Incentive Program Funds from Howett's account.

Accordingly, there is no disputed material fact that Defendant owed a fiduciary duty to Plaintiff, which Defendant breached by transferring the $29,750 to its own account.

## B.  Intentional Interference with Business Relations

To prevail on a claim for intentional interference with business relations, also called "tortious interference," a party must prove four elements: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages." *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981). Here, the contract for the Incentive Program Funds was between LSMA and Medicare/Medicaid. (D.I. 86, ¶ 102). Howett was merely a beneficiary of, and not a party to, the contract between LSMA and Medicare/Medicaid. (D.I. 86, ¶ 106). An opportunity is something that has not yet occurred. There is no hint in any of the pleadings filed in this case that suggest that Howett lost some opportunity by virtue of the undisputed facts. Taking money that is due to Howett after Howett had left Defendant's employ does not constitute "intentional interference" with business relations. Not only is there no basis to grant summary judgment to Howett, it seems clear that summary judgment should be granted to Defendant on this count. Defendant, however, has not requested summary judgment. Thus, I am giving notice that I intend to grant summary judgment to Defendant on this count. I will, pursuant to Rule 56(f)(1)

7

give Plaintiff the opportunity to respond by March 21, 2018, in opposition. Failure to so respond by that date will be interpreted as Plaintiff not opposing the grant of summary judgment. Additionally, there exists a dispute of material fact regarding the second element of the claim for tortious interference. Specifically, Howett made no showing of "purposeful action" by LSMA that was "specifically intended to harm" Howett's relationship with the Incentive Program.

## C. Leave to Amend

I am denying LSMA leave to amend the answer to the second amended complaint. The factors the Court should consider are the timeliness of the motion, undue prejudice to the other party, bad faith or dilatory motive, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 181 (1962). In this case, LSMA has not plead assignment of rights, res judicata, or collateral estoppel as affirmative defenses in three years of litigation, but wishes to do so in response to a motion for summary judgment. Affirmative defenses asserted for the first time during summary judgment motion practice are not timely. Granting leave to amend to assert assignment as an affirmative defense would be futile, since, as Howett contends, LSMA has "not put one scintilla of evidence forward to support a position of assignment" that could reasonably permit a verdict for LSMA on that basis. (D.I. 98, p. 7).

### i. Assignment of Rights

After the moving party demonstrates that there is no issue of material fact, Rule 56 requires the non-moving party to set forth specific facts showing that there is a genuine issue of material fact justifying a trial. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986). Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" *Id*. Here, LSMA has not put forth specific facts to suggest that Howett assigned her rights to the Incentive Program Funds to LSMA. LSMA does not

8

suggest that there was any relevant agreement other than the 2008 contract. Thus, there is no evidence that would support a jury verdict in favor of LSMA.

## ii. Res Judicata

The doctrine of res judicata "refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). Res judicata operates to bar a claim where a five-part test is satisfied:

> (1) [T]he original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree.

*LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 192 (Del. 2009). Here, LSMA asserts the res judicata defense because "this matter" was decided in state court. (D.I. 97, p. 13). LSMA does not, however, say the claims at bar were decided in Howett's case. (*See* D.I. 97). Rather, LSMA stated that Howett's suit in Superior Court concerned contractual damages and was "resolved at trial." (*Id.* at p. 3). Furthermore, the only ruling that LSMA cites from the Superior Court was in relation to Mondero. (D.I. 63, p. 8).

The complaint in the Superior Court case makes no reference at all to the Incentive Program Funds or the legal theories put forth in Counts X and XI of the case at bar. (D.I. 97-2, pp. 2-8). Unless these issues were decided in Howett's case, res judicata cannot apply here because res judicata requires that the issue be decided in a case involving the same parties. Additionally, neither party has provided sufficient detail on the record about the proceedings in the Superior Court. (*See* D.I. 86). Absent some record or explanation of the litigation in the Superior Court, LSMA cannot reasonably expect res judicata to preclude the claims at bar. Mere hints alleging a ruling in the prior proceeding are meaningless without supporting evidence.

9

Thus, LSMA provides no basis to believe that res judicata could possibly be a meritorious defense.

### iii. Collateral Estoppel

Delaware courts apply a four-part test to determine whether collateral estoppel is appropriate. *Taylor v. State*, 402 A.2d 373, 375 (Del. 1979). "Collateral estoppel requires that (1) a question of fact essential to the judgment (2) was litigated (3) and determined (4) by a valid and final judgment." *Looney v. City of Wilmington*, 723 F. Supp. 1025, 1032 (D. Del. 1989). In this case, a prior suit was tried in the Delaware Superior Court by Judge Graves. (D.I. 97-5, p. 2). Again, however, there is no relevant information in the record about the Superior Court's ruling.

LSMA had ample opportunity to timely assert the defenses of assignment, res judicata, and collateral estoppel, including most recently when it managed to assert twenty-two other defenses as part of its answer. (D.I. 89). Instead, LSMA chose to do so in the midst of a motion for partial summary judgment. Thus, it is too late, and it appears that these defenses are futile. LSMA has not put forth any evidence in the record to support the defenses of res judicata or collateral estoppel. LSMA's request for leave to amend is DENIED.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for Partial Summary Judgment on Count X (Breach of Fiduciary Duty) is GRANTED, Plaintiff's motion for Partial Summary Judgment on Count XI (Intentional Interference with Business Relations) is DENIED, Plaintiff is given until April 13, 2018, to oppose a grant of summary judgment to Defendant on Count XI, and Defendant is DENIED leave to amend the answer to the second amended complaint. After

Count XI is resolved, judgment will be entered for Plaintiff and against Defendant in the amount of $29,750.